**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HOLLIS TEDFORD, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>EQUITABLE FINANCIAL LIFE INSURANCE COMPANY, THE BENEFITS ADMINISTRATIVE COMMITTEE FOR THE EQUITABLE 401(K) PLAN, and THE INVESTMENT COMMITTEE FOR THE EQUITABLE 401(K) PLAN,<br><br>    Defendants. | No. 2:25-cv-02180-JKS-AME<br><br>Return Date: January 5, 2026 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................2

     A.    The Plan .........................................................................................................3

          1.    The Plan's Investment Funds...................................................................3

          2.    The Plan's Recordkeeper ........................................................................5

     B.    The Amended Complaint................................................................................6

APPLICABLE PLEADING STANDARDS ................................................................................7

ARGUMENT..............................................................................................................................9

I.     TEDFORD'S CLAIM FOR BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF .............................. 9

     A.    Tedford Fails To Plausibly Claim That It Was Imprudent To Offer The Fixed Income Fund ..................................................................................... 9

     B.    Tedford's Fiduciary-Breach Claim Should Also Be Dismissed Insofar As It Is Based On The Selection Of The Fixed Income Fund And Asserted Against The Administrative Committee ............................................................... 14

          1.    Tedford's Fiduciary-Breach Claim Based On The Selection Of The Fixed Income Fund Is Time-Barred........................................................... 15

          2.    The Administrative Committee Is Not A Fiduciary With Responsibility For The Fixed Income Fund ........................................... 15

II.    TEDFORD'S CLAIM FOR BREACH OF THE DUTY TO MONITOR SHOULD BE DISMISSED AS DERIVATIVE OF HIS FIDUCIARY-BREACH CLAIM ............ 16

III.   TEDFORD'S CLAIM FOR VIOLATION OF ERISA'S PROHIBITED TRANSACTION RULES SHOULD BE DISMISSED .................................................... 17

     A.    Tedford's Section 406(a)(1)(C) Claim Should Be Dismissed Because Alight Was Not A Party-In-Interest And The Claim Is Untimely ........................ 17

     B.    Tedford's Section 406(a)(1)(D) Claim Should Be Dismissed Because The Plan's Payment Of Recordkeeping Fees Pursuant To Its Contract With Alight Is Not A "Transaction" Within The Meaning Of Section 406 .................. 19

CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abel v. CMFG Life Ins. Co.*,
   No. 22-cv-449, 2024 WL 307489 (W.D. Wis. Jan. 26, 2024)............................................10, 12

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022) ........................................................................................ 13-14

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
   137 F.4th 1015 (9th Cir. 2025) ...........................................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................................7

*Atl. Shore Surgical Assocs. v. United Healthcare Ins. Co.*,
   No. 20-cv-3065, 2021 WL 2411373 (D.N.J. June 14, 2021)............................................. 2-3

*Barchock v. CVS Health Corp.*,
   886 F.3d 43 (1st Cir. 2018) ................................................................................................11

*Bloom v. AllianceBernstein L.P.*,
   725 F. Supp. 3d 325 (S.D.N.Y. 2024).................................................................................12

*Bouvy v. Analog Devices, Inc.*,
   No. 19-cv-881, 2020 WL 3448385 (S.D. Cal. June 24, 2020) ...............................................19

*Chavez v. Plan Benefit Servs., Inc.*,
   No. 17-cv-659, 2018 WL 6220119 (W.D. Tex. Sept. 12, 2018) ...........................................19

*Cho v. Prudential Ins. Co. of Am.*,
   No. 19-cv-19886, 2021 WL 4438186 (D.N.J. Sept. 27, 2021)................ 7, 8, 12, 13, 14, 16-17

*Connelly v. Lane Constr. Corp.*,
   809 F.3d 780 (3d Cir. 2016)..................................................................................................7

*Cunningham v. Cornell Univ.*,
   604 U.S. 693 (2025)..........................................................................................................8, 17

*D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co.*,
   88 F.4th 602 (5th Cir. 2023) ...........................................................................................18, 19

*Danza v. Fidelity Mgmt. Tr. Co.*,
   533 F. App'x 120 (3d Cir. 2013) ........................................................................................18

*Ellis v. Fidelity Mgmt. Tr. Co.*,
   883 F.3d 1 (1st Cir. 2018) .................................................................................................11

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) ............................................................................................................7

*Forman v. TriHealth, Inc.*,
   40 F.4th 443 (6th Cir. 2022) ......................................................................................... 9-10

*Fumich v. Novo Nordisk Inc.*,
   No. 24-cv-9158, 2025 WL 2399134 (D.N.J. Aug. 19, 2025) ...........................................10, 14

*Gonzalez v. Northwell Health, Inc.*,
   632 F. Supp. 3d 148 (E.D.N.Y. 2022) .................................................................................12

*Harris Tr. & Savs. Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. 238 (2000)...........................................................................................................18

*Hughes v. Nw. Univ.*,
   595 U.S. 170 (2022).............................................................................................................8

*In re Allergan ERISA Litig.*,
   No. 17-cv-1554, 2018 WL 8415676 (D.N.J. July 2, 2018),
   *aff'd*, 975 F.3d 348 (3d Cir. 2020) ....................................................................................16

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)..............................................................................................2

*Lalonde v. Mass. Mut. Ins. Co.*,
   728 F. Supp. 3d 141 (D. Mass. 2024) ............................................................................12, 14

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996)...........................................................................................................18

*Matney v. Barrick Gold of N. Am.*,
   80 F.4th 1136 (10th Cir. 2023) ..........................................................................................13

*Mator v. Wesco Distrib., Inc.*,
   102 F.4th 172 (3d Cir. 2024) ...........................................................................................8, 11

*Matousek v. MidAmerican Energy Co.*,
   51 F.4th 274 (8th Cir. 2022) ..............................................................................................13

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) ...........................................................................................8, 10

*Patterson v. Morgan Stanley*,
No. 16-cv-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)................................................10

*Pegram v. Herdrich*,
530 U.S. 211 (2000)................................................................................................................16

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctr. Ret. Plan v.*
*Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)....................................................................................................10

*Pizarro v. Home Depot, Inc.*,
111 F.4th 1165 (11th Cir. 2024) ......................................................................................11, 12

*Renfro v. Unisys Corp.*,
671 F.3d 314 (3d Cir. 2011)..........................................................................................3, 7, 16

*Santiago v. Warminster Twp.*,
629 F.3d 121 (3d Cir. 2010).....................................................................................................8

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*,
768 F.3d 284 (3d Cir. 2014)....................................................................................................16

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) ..........................................................................................10, 13

*Sweda v. Univ. of Pa.*,
923 F.3d 320 (3d Cir. 2019)...........................................................................................14, 15

*UFCW Loc. 56 Health & Welfare Fund v. Brandywine Operating P'ship, L.P.*,
No. 5-cv-2435, 2005 WL 3555390 (D.N.J. Oct. 28, 2005) ....................................................18

*White v. Chevron Corp.*,
No. 16-cv-793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016),
*aff'd*, 752 F. App'x 453 (9th Cir. 2018).................................................................................10

**STATUTES**

ERISA § 413(1), 29 U.S.C. § 1113(1)....................................................................................15, 18

ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) ........................................................................6

ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C) ...........................................................7, 17, 18

ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D)............................................................7, 17, 19

**OTHER AUTHORITIES**

29 C.F.R. § 2550.404c-1(b) ...................................................................................................3

Fed. R. Civ. P. 12(b)(6).....................................................................................................1, 2

Stable Value Industry Association, *Guide to Stable Value Market Segments*, *available at* https://www.stablevalue.org/wp-content/uploads/StableValueMarketSegments-1.pdf (last visited Oct. 22, 2025) .................................................................................................................................5

Thomas P. Lemke & Gerald T. Lins, *ERISA for Asset Managers and Collective Trust Funds* §§ 2.161, 3.37 (2025 ed.), Westlaw (database updated Oct. 2025) .................4, 5

Defendants Equitable Financial Life Insurance Company *f/k/a* AXA Equitable Life Insurance Company ("Equitable"), the Benefits Administrative Committee for the Equitable 401(k) Plan ("Administrative Committee"), and the Investment Committee for the Equitable 401(k) Plan ("Investment Committee") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint (ECF No. 14) pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Equitable offers its employees and financial professionals the opportunity to save for retirement by contributing a portion of their earnings into a participant-directed 401(k) plan. Like hundreds of other recently filed lawsuits, this putative class action commenced by former financial professional Hollis Tedford alleges (1) a claim for breach of fiduciary duty of prudence under the Employee Retirement Income Security Act of 1974 ("ERISA") based on the selection and offering of one of the plan's many investment funds—the Fixed Income Fund, which is a stable value fund; and (2) violations of ERISA's prohibited transaction rules based on the contract with Alight Financial Solutions, LLC ("Alight") to provide recordkeeping services to the plan and the payments made pursuant to that contract.

Tedford's breach-of-the-duty-of-prudence claim (Count I) against the Investment Committee and the Administrative Committee should be dismissed because his only allegation is that the Fixed Income Fund had lower "crediting rates" (i.e., returns) than the stable value funds he cherry-picked for comparison in the Amended Complaint, and it is well established that such allegations of underperformance, without more, are insufficient to raise an inference of a fiduciary breach. This is particularly true where, as here, the challenged investment is a stable value fund whose principal purpose is to preserve participant assets. Despite acknowledging in

the Amended Complaint that there are many types of stable value funds in the marketplace with differing risk profiles, Tedford fails to even identify the type of each stable value fund to which he purports to compare the Fixed Income Fund, much less anything about each fund's characteristics. Tedford's failure to allege *anything* about why the funds he identified in the Amended Complaint are proper comparators to the Fixed Income Fund is fatal to his claim. In the absence of a plausible breach-of-the-duty-of-prudence claim, Tedford's derivative claim against Equitable for breach of the duty to monitor (Count II) fails as well.

Tedford also claims that Defendants engaged in prohibited transactions by contracting with Alight to provide recordkeeping services to the plan (Count III). This claim fails because Alight was not a "party in interest" at the time the parties first contracted, and even if it was, Tedford concedes that contract was entered into more than a decade ago, making his claim untimely under ERISA's six-year statute of repose. Tedford's claim that payments made pursuant to that agreement were prohibited transactions fares no better because payments made pursuant to a contract are not "transactions" within the meaning of ERISA's prohibited transaction rules.

In short, the Amended Complaint should be dismissed with prejudice.

## BACKGROUND

The facts recited herein are based on the allegations in the Amended Complaint (ECF No. 14) and documents on which the Amended Complaint expressly relies. In deciding a Rule 12(b)(6) motion to dismiss, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted). The plan document is integral to a complaint alleging ERISA claims relating to the plan. *See, e.g.*, *Atl. Shore Surgical Assocs. v. United Healthcare Ins. Co.*, No. 20-

2

cv-3065, 2021 WL 2411373, at *2 n.5 (D.N.J. June 14, 2021) ("Although [plaintiff] did not attach the Plan to its Amended Complaint, I may properly consider it on this motion because it is integral to the claims, and because Defendants submitted it with their motion.") (collecting cases). Additionally, because the Amended Complaint expressly relies on the plan's Form 5500s (*see, e.g.*, ECF No. 14 at 1 n.1, ¶¶ 11-12, 15, 32-33, 56) and participant fee disclosures (*id.* ¶¶ 105 n.14, 106 n.15), those documents are properly considered in connection with Defendants' motion to dismiss. *See, e.g.*, *Renfro v. Unisys Corp.*, 671 F.3d 314, 319 (3d Cir. 2011) (considering documents relied on in complaint).

### A.      The Plan

The Equitable 401(k) Plan *f/k/a* the AXA Equitable 401(k) Plan ("Plan") is a participant-directed, individual retirement account plan that offers a diversified menu of investment funds in which participants may invest for retirement. (ECF No. 14 ¶ 2; Declaration of Sheila Labita ("Labita Decl.") Ex. A Art. V.)

### 1.      The Plan's Investment Funds

The Investment Committee is the committee charged with responsibility for selecting and monitoring each of the Plan's investment funds. (ECF No. 14 ¶¶ 40-41; Labita Decl. Ex. A §§ 2.43C, 15.1.) As discussed below, the Amended Complaint targets only the Fixed Income Fund, which is a stable value fund that has been available for investment by Plan participants since 1992. (Labita Decl. Ex. B at B13; *id.* Ex. C at 12-13.)[1] The Fixed Income Fund, like all

---

[1] The U.S. Department of Labor, one of the agencies charged with responsibility for administering ERISA, encourages defined contribution plans to include stable value investment options to provide an "income producing, low risk, liquid fund." 29 C.F.R. § 2550.404c-1(b)(2)(ii)(C), (b)(3).

stable value funds, provides participants "an option that protects their assets and is shielded from risks of loss" (ECF No. 14 ¶ 75) and provides a rate of return known as its "crediting rate" (*id.* ¶¶ 19, 76).[2]

As the Amended Complaint acknowledges (*id.* ¶¶ 77-79), there are several different types of stable value investment products available in the marketplace, including general account products, separate account products, and synthetic funds.

- General account products are the riskiest stable value products because participant investments are deposited directly into the insurance company's general account and are subject to claims by the insurance company's creditors. (*Id.* ¶ 79.)

- Separate account products are less risky than general account products because participant investments are deposited in a separate account of the insurance company and thus are not subject to collection risk by the insurance company's creditors. (*Id.* ¶ 78.)

- Synthetic funds are the most conservative (i.e., least risky) stable value products because the plan holds guaranteed investment contracts ("GICs") issued by multiple third-party financial institutions and the hundreds of fixed income investments that underlie those contracts. (*Id.* ¶ 77; Labita Decl. Ex. D at 17-29.) By virtue of the plan

---

[2] A stable value fund is like a bond fund because it invests in fixed income securities. However, unlike a typical bond fund whose price rises and falls with market interest rates, a stable value fund aims to keep the participant's balance steady. It does this by using a guarantee provided by a bank or insurance company, or purchasing guarantee contracts or "wrappers," along with a cash buffer, which enables the fund to value a participant's account at "book value," i.e., principal plus interest at a crediting rate, rather than at an amount that fluctuates with day-to-day market prices. A participant can withdraw at this book value, even if the current market value of his or her underlying principal investment is lower. *See* Thomas P. Lemke & Gerald T. Lins, *ERISA for Asset Managers and Collective Trust Funds* §§ 2.161, 3.37 (2025 ed.), *available on* Westlaw (database updated Oct. 2025).

holding GICs from multiple financial institutions, as well as their underlying investments, participant investments are less susceptible to the risk that the issuers will not be able to fulfill their payment obligations. (ECF No. 14 ¶ 77.)

The Amended Complaint fails to acknowledge, however, that the investments within each type of stable value fund product have materially different characteristics, including with respect to: (i) whether the plan has a right to information about the fund's underlying investments; (ii) the speed and costs of removing the fund from the plan; (iii) how much and how the insurers are paid; and (iv) the methodology for how crediting rates are determined. *See* Stable Value Industry Association, Guide to Stable Value Market Segments, *available at* https://www.stablevalue.org/wp-content/uploads/StableValueMarketSegments-1.pdf (last visited Oct. 22, 2025); Labita Decl. Ex. D at 9, 11-13, 17-29; Lemke & Lins, *ERISA for Asset Managers and Collective Trust Funds* §§ 2.161, 3.37, *available on* Westlaw (database updated Oct. 2025) (describing different characteristics of stable value funds).

The Fixed Income Fund is a separately managed synthetic stable value fund. (ECF No. 14 ¶ 55.)

### 2.      The Plan's Recordkeeper

The Administrative Committee is the committee charged with responsibility for selecting and monitoring the Plan's recordkeeper. (Labita Decl. Ex. A § 2.5A.) The recordkeeper is responsible for maintaining participant account records, processing transactions, and handling other administrative tasks associated with defined contribution plans. (ECF No. 14 ¶ 96.) Tedford concedes that Alight entered into a contract to provide recordkeeping services to the Plan in 2012 (or earlier) that ceased in 2021. (*Id.* ¶¶ 92, 106 & n.16.) Alight charged Plan

5

participants $50 per participant annually for recordkeeping services. (*Id.* ¶ 106 n.15; Labita Decl. Ex. E at 2.)

### B.    The Amended Complaint

Plaintiff Hollis Tedford is a former participant in the Plan (ECF No. 14 ¶¶ 29-30) who asserts that the Investment Committee and the Administrative Committee selected and maintained the Fixed Income Fund as the stable value investment option in the Plan even though it had lower crediting rates when compared to available "similar or identical investments with higher crediting rates" (*id.* ¶ 19) and "carried significantly more risk than other investment options that had similar goals" (*id.* ¶ 21). While Tedford contends that there were "identical or substantially identical stable value funds with higher crediting rates" that were available to the Plan (*id.* ¶ 84), he does not allege any facts about the characteristics of any of his "comparator funds"—not even the type of stable value fund (*id.* ¶¶ 84-86).

Tedford also alleges that Alight charged excessive recordkeeping fees because the Plan should have paid no more than $27 per participant, i.e., the average fee that Tedford alleges that twenty other plans paid. (*Id.* ¶¶ 109, 111.)

Based on these allegations, Tedford asserts three causes of action:

- Count I: A claim against the Investment Committee and the Administrative Committee under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), for breach of fiduciary duty of prudence based on selecting and maintaining the Fixed Income Fund as the Plan's stable value investment option. (ECF No. 14 ¶¶ 114-20.)

- Count II: A claim against Equitable for breach of the duty to monitor based on its alleged failure to adequately monitor the Investment Committee and the Administrative Committee. (*Id.* ¶¶ 121-27.)

- Count III: A claim against all Defendants under ERISA § 406(a)(1)(C) and ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(C) and 29 U.S.C. § 1106(a)(1)(D), for engaging in prohibited transactions by entering into a recordkeeping agreement with Alight pursuant to which the Plan paid contractually obligated fees to Alight (ECF No. 14 ¶¶ 128-33).

Tedford purports to represent a putative class of all participants in the Plan since March 31, 2019. (*Id.* ¶ 45.)

**APPLICABLE PLEADING STANDARDS**

In the ERISA class action context, the Supreme Court has emphasized that a motion to dismiss is an "important mechanism for weeding out meritless claims" of breach of fiduciary duty, and that a court's evaluation of whether a plausible claim has been pled is "context specific." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). A plaintiff must "allege enough facts to state a claim to relief that is plausible on its face." *Renfro*, 671 F.3d at 320-21 (citation omitted). A claim is plausible if the plaintiff pleads "factual content 'that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cho v. Prudential Ins. Co. of Am.*, No. 19-cv-19886, 2021 WL 4438186, at *3 (D.N.J. Sept. 27, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard requires that the complaint "show more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016)).

ERISA's duty of prudence is based on an objective standard that focuses on the process by which decisions are made "rather than [the] results" of those decisions. *Id.* at *7 (citation omitted). Where, as here, a complaint lacks direct allegations about fiduciaries' decision-making processes, plaintiffs need not directly allege how defendants mismanaged the plan, but they must

7

provide "substantial circumstantial evidence" to permit the court to "reasonably infer that a breach had occurred." *Id.* (citation omitted). In other words, "[p]laintiffs who rely on 'circumstantial evidence must . . . provide a sound basis for comparison – a meaningful benchmark – to show a prudent fiduciary in like circumstances would have selected a different fund.'" *Id.* (citation omitted).

Recognizing that ERISA fiduciaries will often face "difficult tradeoffs," the Supreme Court has instructed that "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise," even in the Rule 12 context. *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). "To plead a breach of the duty of prudence under ERISA, then, a plaintiff must plausibly allege fiduciary decisions outside a range of reasonableness." *Mator v. Wesco Distrib., Inc.*, 102 F.4th 172, 184 (3d Cir. 2024). The question is not whether a plaintiff has alleged a better-performing investment existed in the marketplace; plaintiffs can do that in every case. *See, e.g.*, *Cho*, 2021 WL 4438186, at *11 (holding allegations that "cheaper alternatives [sic] investments exist in the marketplace" are not enough to adequately plead fiduciary-breach claim) (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)).

A plaintiff seeking to plead a prohibited transaction claim must "plausibly allege that a plan fiduciary engaged in a transaction proscribed [in section 406 of ERISA]." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 709 (2025).

In all cases, it is insufficient for plaintiffs to rely on conclusory allegations. *See, e.g.*, *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (disregarding legal conclusions and conclusory statements); *Cho*, 2021 WL 4438186, at *10-13 (same).

**ARGUMENT**

**I.    TEDFORD'S CLAIM FOR BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF.**

Tedford's claim for breach of fiduciary duty (Count I), which is predicated on selecting and maintaining the Fixed Income Fund as an investment option for Plan participants, should be dismissed because Tedford fails to allege plausible facts that give rise to an inference of imprudence. While the Court need not proceed further, certain aspects of Tedford's fiduciary-breach claim should be dismissed for additional reasons; namely, his claim based on the selection of the Fixed Income Fund fails because it is time-barred, and his claim against the Administrative Committee is implausible because that Committee has no fiduciary responsibility related to Plan investments.

**A.    Tedford Fails To Plausibly Claim That It Was Imprudent To Offer The Fixed Income Fund.**

Tedford's claim that the Investment Committee and the Administrative Committee breached their fiduciary duty of prudence by selecting and maintaining the Fixed Income Fund (ECF No. 14 ¶ 19) as a Plan investment option fails because: (1) allegations of underperformance, standing alone, do not give rise to an inference of imprudence; (2) he seeks to compare fifteen stable value fund products without so much as identifying each one's product type or *any* of their characteristics that would permit the Court to draw an inference of a fiduciary breach; and (3) his conclusory allegation that the Fixed Income Fund carried more risk is implausible and, moreover, is belied by his own allegations.

To begin with, it is well established that allegations of poor performance, standing alone, are not sufficient to create an inference of imprudence. *See, e.g.*, *Forman v. TriHealth, Inc.*, 40 F.4th 443, 448-49 (6th Cir. 2022) ("[A] showing of imprudence cannot 'come down to simply

9

pointing to a fund with better performance.'") (quoting *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022)); *Meiners*, 898 F.3d at 823 ("No authority requires a fiduciary to pick the best performing fund."); *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718-19 (2d Cir. 2013) ("Nor is it necessarily sufficient to show that better investment opportunities were available at the time of the relevant decisions."); *Fumich v. Novo Nordisk Inc.*, No. 24-cv-9158, 2025 WL 2399134, at *5 (D.N.J. Aug. 19, 2025) ("Allegations of underperformance, without more, do not suffice.") (citing *Smith*, 37 F.4th at 1166); *Patterson v. Morgan Stanley*, No. 16-cv-6568, 2019 WL 4934834, at *17 (S.D.N.Y. Oct. 7, 2019) ("ERISA does not require clairvoyance on the part of plan fiduciaries, nor does it countenance opportunistic Monday-morning quarter-backing on the part of lawyers and plan participants who, with the benefit of hindsight, have zeroed in on the underperformance of certain investment options."); *Abel v. CMFG Life Ins. Co.*, No. 22-cv-449, 2024 WL 307489, at *4 (W.D. Wis. Jan. 26, 2024) (dismissing complaint where "plaintiffs ask [the] court to infer with the benefit of hindsight unavailable to the Committee that defendants committed a breach of their fiduciary duty simply because the [challenged funds] ultimately underperformed in comparison to [other funds]"); *White v. Chevron Corp.*, No. 16-cv-793, 2016 WL 4502808, at *17 (N.D. Cal. Aug. 29, 2016) ("Poor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to conduct an adequate investigation—either when the investment was selected or as its underperformance emerged . . . ."), *aff'd*, 752 F. App'x 453, 455 (9th Cir. 2018).

Courts have been especially skeptical of challenges to stable value investments because they "are intentionally and openly designed to be conservative," and thus comparing their performance to more aggressive benchmarks would mean outlawing plan fiduciaries from

10

offering conservative investments altogether. *Ellis v. Fidelity Mgmt. Tr. Co.*, 883 F.3d 1, 9 (1st Cir. 2018). In *Ellis*, the First Circuit rejected a claim that plan fiduciaries acted imprudently by managing a stable value fund too conservatively and not investing in higher-risk, higher-return investments because sustaining such a claim would mean "say[ing] that ERISA plans may not offer very conservative investment options." *Id.* Similarly, in *Barchock v. CVS Health Corp.*, the First Circuit also affirmed the dismissal of plaintiff's claims that the stable value fund was invested too conservatively relative to industry standards because "it [was] hard to see how the fact that a stable value fund was run conservatively indicates that it was being run imprudently." 886 F.3d 43, 51 (1st Cir. 2018). Likewise, in *Pizarro v. Home Depot, Inc.*, the Eleventh Circuit affirmed the dismissal of plaintiff's claim that retaining the stable value fund was imprudent because the fund achieved its "principal objective [of] capital preservation . . . by delivering positive returns" throughout the class period. 111 F.4th 1165, 1180 (11th Cir. 2024).

Applying these principles here, Tedford's fiduciary-breach claim should be dismissed. Tedford has done nothing more than identify different stable value funds that allegedly have higher crediting rates than the Fixed Income Fund. Such alleged underperformance, standing alone, is not a proxy for imprudence, particularly where the Amended Complaint contains no allegations that the selection or retention of the Fixed Income Fund was outside the range of reasonable judgments a reasonable fiduciary could have made. *Mator*, 102 F.4th at 184. That is especially true given Tedford's concession that the Fixed Income Fund produced a positive return every year and preserved participants' capital (ECF No. 14 ¶ 86), which is precisely what it was intended to do (*id.* ¶ 75). As in *Ellis*, *Barchock*, and *Pizarro*, Tedford's assertion that the Investment Committee and the Administrative Committee should have instead sought to "maximize[] the value of [participant's] investments" (*id.* ¶ 90) fails to state a claim.

11

Even if Tedford's allegations of underperformance were coupled with other plausible allegations of imprudence—which they are not—the differences in crediting rates between the Fixed Income Fund and Tedford's alleged comparator funds are not sufficiently substantial to warrant an inference of imprudence. Tedford alleges that the Fixed Income Fund underperformed fifteen stable value funds whose average annual returns were 1.48% to 2.52% higher than those of the Fixed Income Fund during the putative class period. (*Id.* ¶¶ 84-86.) Courts have routinely held that similar and greater disparities are not enough to infer a fiduciary breach. *See Lalonde v. Mass. Mut. Ins. Co.*, 728 F. Supp. 3d 141, 148 (D. Mass. 2024) (dismissing imprudence claim premised on allegations that challenged stable value fund had crediting rate .75% to 2.5% lower than those of alleged comparator); *Cho*, 2021 WL 4438186, at *9-10 (.07% to 3.71% underperformance insufficient); *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 164 (E.D.N.Y. 2022) (1.94%, 1.99%, and 2.57% underperformance insufficient); *Abel*, 2024 WL 307489, at *5 (.2% to 5% underperformance insufficient).

Similarly, Tedford sets forth the performance of just two funds over a four-year period, and for the other thirteen, just one or two years of performance, often in non-consecutive years. (ECF No. 14 ¶ 85.) Such barebones comparisons do not establish the type of consistent and substantial underperformance that would support an inference of imprudence. *See Pizarro*, 111 F.4th at 1179-80 ("A few here-and-there years of below-median returns, however, are not a meaningful way to evaluate a [fund's] success as a long-term investment vehicle."); *Gonzalez*, 632 F. Supp. 3d at 163 (holding allegations of three- and five-year underperformance "do not support a plausible inference that defendants acted imprudently"); *Bloom v. AllianceBernstein L.P.*, 725 F. Supp. 3d 325, 342 (S.D.N.Y. 2024) (granting motion to dismiss imprudence claim where "no data spann[ed] more than five years").

12

Tedford's claim of imprudence should be dismissed for the additional reason that he has failed to allege any basis for comparing the Fixed Income Fund to his alleged comparators, let alone a "sound" one, such that a prudent fiduciary in like circumstances would have selected a different fund. *Cho*, 2021 WL 4438186, at *7 (citation omitted). Despite conceding in the Amended Complaint that there are "several different types of stable value investment[s]" in the marketplace and numerous characteristics differentiating them from one another (*see* Background § A.1), Tedford fails to allege that the Fixed Income Fund and the other funds he identified are the same type of product or share *any* of the same characteristics. Instead, Tedford's only assertions are conclusory: he alleges that the purported comparator funds are "identical or substantially identical stable value funds" and all "stable value GICs provided by the same or other comparable carriers." (ECF No. 14 ¶¶ 84-85.) This is not enough to make his alleged comparator funds meaningful benchmarks. *See Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1023 (9th Cir. 2025) ("[S]imply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful benchmarks against which to compare the performance of the [challenged] funds.") (citation omitted); *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1154 (10th Cir. 2023) (holding "conclusory allegation" that alleged comparator fund held investments "identical to those held by the [challenged] fund" insufficient to establish meaningful comparison); *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022) (affirming dismissal of claim absent allegations of whether comparator funds "hold similar securities, have similar investment strategies, and reflect a similar risk profile"); *Smith*, 37 F.4th at 1167 ("A side-by-side comparison of how two funds performed in a narrow window of time, with no consideration of their distinct objectives, will not tell a fiduciary which is the more prudent long-term investment option."); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 582

13

(7th Cir. 2022) (affirming dismissal of imprudence claim based on investment fees "[i]n the absence of more detailed allegations providing 'a sound basis for comparison'") (citation omitted); *Fumich*, 2025 WL 2399134, at \*5 (dismissing imprudence claim premised on "conclusory" comparisons to alternative, better-performing funds); *Lalonde*, 728 F. Supp. 3d at 157 (rejecting fiduciary-breach claim based on availability of "materially identical" stable value fund); *Cho*, 2021 WL 4438186, at \*8 (dismissing imprudence claim based on allegation that comparator fund merely had the same "investment style").

Finally, Tedford's conclusory assertion that the Fixed Income Fund "carried significantly more risk" (ECF No. 14 ¶ 21) is not entitled to any weight or assumption of truth. *See, e.g.*, *Sweda v. Univ. of Pa.*, 923 F.3d 320, 330 (3d Cir. 2019) (disregarding as conclusory allegation that "a prudent process would have produced a different outcome" in evaluating motion to dismiss). This is particularly true here because Tedford alleges that the Fixed Income Fund is a synthetic product and such products are the least risky type of stable value fund. (*See* Background § A.1.)

In short, Tedford has not alleged any facts that give rise to an inference of imprudence and his claim for breach of fiduciary duty of prudence (Count I) should thus be dismissed.

**B.      Tedford's Fiduciary-Breach Claim Should Also Be Dismissed Insofar As It Is Based On The Selection Of The Fixed Income Fund And Asserted Against The Administrative Committee.**

Tedford's failure to allege plausible facts that give rise to an inference of imprudence is fatal to his claim for breach of fiduciary duty (Count I) and the Court need not proceed further. There are, however, certain aspects of his claim that are dismissible for additional reasons: first, Tedford's claim for breach of fiduciary duty based on the initial selection of the Fixed Income

Fund is time-barred; and, second, Tedford fails to state a claim against the Administrative Committee because that Committee is not a fiduciary with respect to the Plan's investments.

**1.      Tedford's Fiduciary-Breach Claim Based On The Selection Of The Fixed Income Fund Is Time-Barred.**

Tedford's claim that the Investment Committee and the Administrative Committee imprudently "selected" the Fixed Income Fund (ECF No. 14 ¶¶ 19, 90, 117) fails because it is barred by ERISA's six-year statute of repose. Section 413(1) of ERISA provides that "[n]o action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part . . . six years after . . . the date of the last action which constituted a part of the breach or violation," including claims for breach of fiduciary duty. 29 U.S.C. § 1113(1); *Sweda*, 923 F.3d at 334-35 (affirming dismissal of plaintiff's claim that plan's initial inclusion of fund was imprudent where fund had been added more than six years prior to commencement of suit).

Because the Fixed Income Fund was added to the Plan's investment menu more than six years prior to the commencement of this action (*see* Background § A.1), any claim for breach of fiduciary duty based on its initial inclusion in the Plan is time-barred.

**2.      The Administrative Committee Is Not A Fiduciary With Responsibility For The Fixed Income Fund.**

Tedford's fiduciary-breach claim against the Administrative Committee should be dismissed because he fails to plausibly allege that the Administrative Committee was or is a fiduciary with respect to selecting and monitoring the Plan's investment funds.

"In every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was

15

performing a fiduciary function) when taking the action subject to complaint." *Renfro*, 671 F.3d at 321-22 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). Courts have uniformly held that a fiduciary's obligations only extend to those acts over which the fiduciary has authority according to applicable plan documents, and thus a fiduciary cannot be held liable for breaching a duty it does not hold. *See, e.g.*, *id.* at 323-24 (affirming Rule 12(b)(6) dismissal of fiduciary-breach claim for failing to prudently select and monitor plan's investment options because defendant was not a fiduciary for that purpose); *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 295 (3d Cir. 2014) (same). Here, Tedford alleges no facts to support his fiduciary-breach claim against the Administrative Committee. The fiduciary act at issue in Count I is offering the Fixed Income Fund as a Plan investment option (ECF No. 14 ¶ 117), and the Plan document makes clear that the responsibility for Plan investments lies exclusively with the Investment Committee. (*Id.* ¶¶ 40-41; *see* Background § A.)

Accordingly, Count I should be dismissed as against the Administrative Committee.

## II.    TEDFORD'S CLAIM FOR BREACH OF THE DUTY TO MONITOR SHOULD BE DISMISSED AS DERIVATIVE OF HIS FIDUCIARY-BREACH CLAIM.

In Count II, Tedford alleges that Equitable breached its duty to monitor the Investment Committee and the Administrative Committee. It is well established that a breach-of-the-duty-to-monitor claim cannot stand where, as here, there is no plausible underlying breach of the duties imposed by ERISA. *See In re Allergan ERISA Litig.*, No. 17-cv-1554, 2018 WL 8415676, at *7 (D.N.J. July 2, 2018) (dismissing breach-of-the-duty-to-monitor claim as derivative of breach-of-fiduciary-duty claim that had been dismissed), *aff'd*, 975 F.3d 348 (3d Cir. 2020); *Cho*, 2021 WL

16

4438186 at *14 (same). As discussed in Point I.A, *supra*, Tedford has not plausibly alleged a breach of fiduciary duty. Accordingly, Count II should be dismissed.

### III.  TEDFORD'S CLAIM FOR VIOLATION OF ERISA'S PROHIBITED TRANSACTION RULES SHOULD BE DISMISSED.

In Count III, Tedford contends that Defendants violated ERISA section 406(a)(1)(C) because the recordkeeping contract with Alight amounted to a prohibited "furnishing of goods, services, or facilities between the plan and a party in interest," and violated ERISA section 406(a)(1)(D) because the subsequent payments to Alight pursuant to that agreement constituted a "'transfer to, or use by or for the benefit of a party in interest, of any assets of the plan.'" (ECF No. 14 ¶ 132.) Tedford's first contention fails because Alight was not a party-in-interest at the time it entered into the challenged agreement and thus the engagement with Alight was not a prohibited transaction. Independently, Tedford's claim is barred by ERISA's six-year statute of repose because he concedes that the contract was entered into more than a decade ago. Tedford's second contention fails because payments made consistent with the terms of the recordkeeping contract are not "transactions" within the meaning of section 406.

### A.  Tedford's Section 406(a)(1)(C) Claim Should Be Dismissed Because Alight Was Not A Party-In-Interest And The Claim Is Untimely.

To state a claim under section 406(a)(1)(C), a plaintiff must plausibly allege that a plan fiduciary "(1) 'caus[ed] the plan to engage in a transaction' (2) that the fiduciary 'knows or should know . . . constitutes a direct or indirect furnishing of goods, services, or facilities' (3) 'between the plan and a party in interest.'" *Cunningham*, 604 U.S. at 700 (quoting 29 U.S.C. § 1106(a)(1)(C)). Tedford's claim should be dismissed because he has not alleged an essential element of the claim; namely, that Alight was a party-in-interest at the time it was engaged to provide recordkeeping services to the Plan.

The Third Circuit has held that a service provider is not a party-in-interest at the time it first contracts with a plan because ERISA's prohibited transaction rules are not intended to prohibit "[n]egotiation between . . . unaffiliated parties." *See Danza v. Fidelity Mgmt. Tr. Co.*, 533 F. App'x 120, 125-26 (3d Cir. 2013) (affirming dismissal of section 406 claims premised on the plan's initial retention of a recordkeeper) (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996)); *UFCW Loc. 56 Health & Welfare Fund v. Brandywine Operating P'ship, L.P.*, No. 5-cv-2435, 2005 WL 3555390, at *3 (D.N.J. Oct. 28, 2005) ("To be a [party-in-interest], a party must have a relationship with the pension plan that preexists, or is independent of, the relationship created by the allegedly prohibited transaction."). This is because, in drafting section 406(a) and the definition of a "party in interest," Congress intended to capture only parties that "a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." *Danza*, 533 F. App'x at 125-26 (quoting *Harris Tr. & Savs. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 242 (2000)); *accord D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co. ("D.L. Markham")*, 88 F.4th 602, 610 (5th Cir. 2023) (concluding that the definition of "party in interest" does not include a future service provider to a plan because "[w]hen a party does not have a preexisting relationship with a plan, there is less risk that a fiduciary would show such party favoritism over the plan's beneficiaries"), *cert. denied*, 144 S. Ct. 2525 (2024).

Tedford fails to allege that Alight had a prior relationship with the Plan such that Alight was a party-in-interest at the time it entered into the contract to provide recordkeeping services to the Plan. As such, his section 406(a)(1)(C) claim should be dismissed.

Tedford's claim also fails because it is untimely. As discussed (*see* Point I.B.1, *supra*), ERISA provides a six-year statute of repose for all claims under Part IV of ERISA, including prohibited transaction claims. *See* 29 U.S.C. § 1113(1). Because the challenged transaction is the

18

Plan's initial contract with Alight, which Tedford concedes commenced in 2012 at the latest (ECF No. 14 ¶ 106 & n.16), his claim is untimely.

Accordingly, Tedford's prohibited transaction claim (Count III) should be dismissed.

**B.      Tedford's Section 406(a)(1)(D) Claim Should Be Dismissed Because The Plan's Payment Of Recordkeeping Fees Pursuant To Its Contract With Alight Is Not A "Transaction" Within The Meaning Of Section 406.**

Tedford alleges that "Defendants' decision to agree to pay excessive fees to Alight as recordkeeper for the Plan amounted to a direct or indirect . . . 'transfer to, or use by or for the benefit of a party in interest, of any assets of the plan'" in violation of section 406(a)(1)(D). (*Id.* ¶ 132.) If Tedford's claim is that entering into an agreement "to pay excessive fees" was a prohibited transaction under section 406(a)(1)(D), that claim fails for the reasons stated in Point III.A, *supra*. If Tedford's claim is that each payment to Alight pursuant to the terms of the contract is a prohibited transaction, that claim fails because payments to a service provider for services pursuant to a contract are not "transactions" within the meaning of section 406. *See D.L. Markham*, 88 F.4th at 613 (holding "'transaction' under § 1106(a) does not include payments in accordance with a contract"); *Chavez v. Plan Benefit Servs., Inc.*, No. 17-cv-659, 2018 WL 6220119, at *3-4 (W.D. Tex. Sept. 12, 2018) (dismissing prohibited transaction claim premised on payment of fees to party-in-interest where contractual obligation to pay those fees arose prior to party becoming party-in-interest); *Bouvy v. Analog Devices, Inc.*, No. 19-cv-881, 2020 WL 3448385, at *12 (S.D. Cal. June 24, 2020) (holding plaintiff failed to state prohibited transaction claim where plaintiff "ignore[d] that the payments were part of the Plan's [recordkeeping contract], which cannot be a prohibited transaction").

Because Tedford does not allege that Alight was paid anything beyond what was due under its contract with the Plan, he fails to state a claim.

19

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss and dismiss the Amended Complaint with prejudice.

Dated:     October 22, 2025          **PROSKAUER ROSE LLP**

By:     */s/ Neil V. Shah*

        Neil V. Shah

Russell L. Hirschhorn (admitted *pro hac vice*)
Sydney L. Juliano (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036
(212) 969-3000
nshah@proskauer.com
rhirschhorn@proskauer.com
sjuliano@proskauer.com

*Counsel for Defendants*