**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HOLLIS TEDFORD, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>EQUITABLE FINANCIAL LIFE INSURANCE COMPANY, THE BENEFITS ADMINISTRATIVE COMMITTEE FOR THE EQUITABLE 401(K) PLAN, and THE INVESTMENT COMMITTEE FOR THE EQUITABLE 401(K) PLAN,<br><br>       Defendants. | No. 2:25-cv-02180-JKS-AME<br><br>Return Date: January 5, 2026 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

I.    TEDFORD'S CLAIM FOR BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED. ................................................................................. 2

    A.    Tedford's Allegations Of Underperformance Do Not Give Rise To An Inference Of A Fiduciary Breach. ...................................................... 3

    B.    Tedford Fails To Allege Any Plausible Facts That Would Allow A Comparison Of The Fixed Income Fund To His Comparator Funds. ....................................................................................................... 5

    C.    Tedford Fails To State Plausible Claims Based On The Selection Of The Fixed Income Fund And Against The Administrative Committee. ................................................................................................ 8

II.    TEDFORD'S DUTY-TO-MONITOR CLAIM SHOULD BE DISMISSED. ................................................................................................. 9

III.    TEDFORD FAILS TO STATE A PLAUSIBLE PROHIBITED TRANSACTION CLAIM. ....................................................................... 9

    A.    Tedford's Section 406(a)(1)(C) Claim Should Be Dismissed. ................... 9

    B.    Tedford's Section 406(a)(1)(D) Claim Should Be Dismissed. ................. 11

CONCLUSION ..................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022) ............................................................................................5

*Berkelhammer v. Automatic Data Processing, Inc.*,
  No. 20-cv-5696, 2022 WL 3593975 (D.N.J. Aug. 23, 2022) .......................................5

*Binder v. PPL Corp.*,
  No. 22-cv-133, 2024 WL 1096819 (E.D. Pa. Mar. 12, 2024) ......................................5

*Carter v. Sentara Healthcare Fiduciary Comm.*,
  No. 25-cv-16, 2025 WL 2427614 (E.D. Va. Aug. 11, 2025) ........................................5

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
  399 F.3d 651 (6th Cir. 2005) .........................................................................................7

*Clinton v. Baxter Int'l Inc.*,
  No. 25-cv-3368, 2025 WL 3470685 (N.D. Ill. Dec. 3, 2025) ...................................4, 8

*Coppel v. SeaWorld Parks & Ent., Inc.*,
  No. 21-cv-1430, 2024 WL 3086702 (S.D. Cal. Jan. 31, 2024) ....................................8

*Cunningham v. Cornell Univ.*,
  604 U.S. 693 (2024) ...............................................................................................10, 11

*Danza v. Fidelity Mgmt. Tr. Co.*,
  533 F. App'x 120 (3d Cir. 2013) ............................................................................10, 11

*Disselkamp v. Norton Healthcare, Inc.*,
  No. 3:18-cv-48, 2019 WL 3536038 (W.D. Ky. Aug. 2, 2019) ....................................3

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
  No. 17-cv-6685, 2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019) ..................................5

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) ..........................................................................................5

*Hughes v. Nw. Univ.*,
  595 U.S. 170 (2022) .................................................................................................1, 6

*In re Quest Diagnostics Inc. ERISA Litig.*,
  No. 20-cv-7936, 2021 WL 1783274 (D.N.J. May 4, 2021) ..........................................5

ii

*Johnson v. Parker-Hannifin Corp.*,
   122 F.4th 205 (6th Cir. 2024) ...................................................................................5

*Lacrosse v. Jack Henry & Assocs., Inc.*,
   No. 23-cv-5088, 2024 WL 3564575 (W.D. Mo. July 11, 2024) ................................8

*Mator v. Wesco Distrib., Inc.*,
   102 F.4th 172 (3d Cir. 2024) ...........................................................................3, 5, 6, 7

*Miller v. AutoZone, Inc.*,
   No. 19-cv-2779, 2020 WL 6479564 (W.D. Tenn. Sept. 18, 2020) ......................5, 8

*Morgan v. Pennsylvania*,
   No. 23-cv-872, 2023 WL 6461245 (M.D. Pa. Oct. 2, 2023) .....................................7

*Newton v. City of Atchison, Kan.*,
   No. 23-cv-2153, 2024 WL 2272565 (D. Kan. May 20, 2024) ...................................8

*Payne v. Hormel Foods Corp.*,
   No. 24-cv-545, 2024 WL 4228613 (D. Minn. Sept. 18, 2024)..............................5, 8

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014)......................................................................................7

*Seibert v. Nokia of Am. Corp.*,
   No. 21-cv-20478, 2024 WL 2316551 (D.N.J. May 22, 2024).....................................8

*Shambaugh & Son, L.P. v. Steadfast Ins. Co.*,
   91 F.4th 364 (5th Cir. 2024) ....................................................................................8

*Sweda v. Univ. of Pa.*,
   923 F.3d 320 (3d Cir. 2019)............................................................................... 11-12

*Takata v. Riot Blockchain, Inc.*,
   No. 18-cv-2293, 2020 WL 2079375 (D.N.J. Apr. 30, 2020)....................................5

*Terraza v. Safeway, Inc.*,
   241 F. Supp. 3d 1057 (N.D. Cal. 2017) ...............................................................5, 7

*Tomaszewski v. Trevena, Inc.*,
   482 F. Supp. 3d 317 (E.D. Pa. 2020) .......................................................................7

*Victaulic Co. v. Tieman*,
   499 F.3d 227 (3d Cir. 2007)......................................................................................7

*Zalewski v. T.P. Builders, Inc.*,
   No. 10-cv-876, 2011 WL 3328549 (N.D.N.Y. Aug. 2, 2011)...................................8

iii

**STATUTES**

ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C) ...................................................................9, 10

ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D)........................................................................11

**OTHER AUTHORITIES**

Brief for the United States as Amicus Curiae, *Parker-Hannifin Corp. v. Johnson*,
No. 24-1030 (U.S. 2025)................................................................................................ 6-7

**PRELIMINARY STATEMENT**

Plaintiff Hollis Tedford admits in the Amended Complaint that he has no knowledge of the Plan fiduciaries' processes for selecting and monitoring the Fixed Income Fund as a Plan investment option. As such, he was required to allege sufficient facts to plausibly establish some other indicia of imprudence because, without them, the Court cannot determine whether the alleged underperformance arose from negligence or simply a "range of reasonable judgments." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). Defendants previously explained that Tedford failed to sustain his pleading burden and nothing in his Opposition Brief alters that conclusion.

Tedford's fiduciary-breach claim (Count I) should be dismissed because his allegation that the Fixed Income Fund sometimes had marginally lower "crediting rates" than other stable value funds cannot give rise to an inference of imprudence. Tedford's attempt to compare the performance of the Fixed Income Fund to other stable value funds cannot salvage his claim—not because the Court should engage in an analysis now about whether his comparator funds are meaningful benchmarks, but because Tedford has not pled any facts that would allow the Court to evaluate his comparator funds; the Amended Complaint fails to offer any facts about those comparator funds and Tedford's request that the Court hunt for such facts in documents referenced for the first time in his Opposition Brief is plainly inappropriate. Apparently recognizing these shortcomings, Tedford resorts to manufacturing an allegation of "imprudent processes," which amounts to nothing more than repackaging his underperformance allegation, coupled with a newfound contention that the Plan fiduciaries failed to conduct a request for proposal ("RFP") that is insufficient as a matter of law. Tedford does not dispute that if his fiduciary-breach claim fails, so does his duty-to-monitor claim (Count II).

Tedford's prohibited transaction claim related to the engagement of Alight (Count III) should be dismissed because Tedford does not dispute that the claim is untimely and the

amendment he now purports to challenge also is time-barred. The claim also should be dismissed because Alight was not a party-in-interest at the time it contracted to provide services to the Plan, and Tedford's arguments to the contrary are based on a misreading of the plain terms of the Plan's Form 5500. Finally, Tedford's prohibited transaction claim based on payments to Alight (Count III) should be dismissed because payments made pursuant to the parties' contract are not "transactions" and Tedford's contention that the Supreme Court ruled otherwise is simply wrong.

For these reasons, the Court should dismiss the Amended Complaint with prejudice.

## I. TEDFORD'S CLAIM FOR BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED.

Tedford's Opposition Brief confirms that his fiduciary-breach claim rests on nothing more than allegations of underperformance based on comparisons to his cherry-picked funds, but it is well established that such allegations cannot suffice to state a claim. What's more, Tedford's allegations at best illustrate that the Fixed Income Fund only *sometimes* underperformed his comparator funds. Contrary to Tedford's assertion, he has not alleged more than underperformance *in the Amended Complaint*, and his contention that an evaluation of whether his comparator funds are "meaningful benchmarks" is not appropriate on a motion to dismiss misses the mark. The point is not whether his comparators are "meaningful benchmarks," but that Tedford pleads no facts at all about them—neither their types (e.g., general account, separate account, synthetic) nor their characteristics (e.g., risk, right to information, fees, method for determining crediting rates)—leaving the Court with nothing from which to evaluate whether to draw an inference of imprudence. Finally, Tedford misconstrues Defendants' additional grounds for dismissing his fiduciary-breach claim based on the selection of the Fixed Income Fund, and ignores the clear terms of the Plan by insisting that the Administrative Committee has fiduciary responsibility for the Fixed Income Fund.

### A.    Tedford's Allegations Of Underperformance Do Not Give Rise To An Inference Of A Fiduciary Breach.

As previously discussed (ECF No. 15-1 at 9-12), allegations of underperformance do not by themselves create an inference of imprudence. Tedford's efforts to undermine this core principle are unavailing. The fact that the Fixed Income Fund is a stable value fund with an agreed-upon crediting rate provides no basis for reaching a different conclusion, as even his authority acknowledges. (ECF No. 20 at 19 (citing *Disselkamp v. Norton Healthcare, Inc.*, No. 3:18-cv-48, 2019 WL 3536038, at *8 (W.D. Ky. Aug. 2, 2019) (agreeing that "any attempt by Plaintiffs to rely on hindsight to prove [a] breach is improper" in evaluating plausibility of challenge to stable value fund)); *see* ECF No. 15-1 at 11-12.) Contrary to Tedford's assertion (ECF No. 20 at 19), the pleading standard that applies to other types of plan investments like mutual funds applies equally to stable value funds; in fact, Tedford relies on those cases as well (*id.* at 20 (citing *Mator v. Wesco Distrib., Inc.*, 102 F.4th 172 (3d Cir. 2024))). And while Tedford purports to challenge (*id.* at 24-25) the relevance of Defendants' authorities explaining the courts' skepticism of challenges to stable value investments (ECF No. 15-1 at 10-11), he offers no meaningful response and instead attacks arguments Defendants never advanced.[1]

Tedford ultimately pivots and contends that he alleged three ways that, in addition to underperformance, "Defendants had imprudent processes" (ECF No. 20 at 17), but that assertion is flatly contradicted by his admission in the Amended Complaint that he "does not have actual knowledge of the specifics of Defendants' decision-making process" concerning the Plan's investments (ECF No. 14 ¶ 71). His newly minted contention, does not, in any event, make his claim any more plausible.

---

[1] Defendants do not contend that "having a 'positive return' . . . warrant[s] dismissal" (ECF No. 20 at 24) nor that "safe investments immunize ERISA fiduciaries from liability" (*id.* at 25).

3

*First*, Tedford's contention that "Defendants failed to investigate or act on information demonstrating that the rates were not commensurate with what the marketplace was offering for similarly situated [guaranteed insurance contracts ('GICs')]" (ECF No. 20 at 17-18) is nothing more than a reframed allegation that the Fixed Income Fund underperformed.

*Second*, Tedford contends that "there were wide disparities between the Fixed Income Fund rates and the rates of comparable GICs." (*Id.* at 19.) But that too is nothing more than a repackaged allegation of underperformance and, moreover, as discussed (ECF No. 15-1 at 12), Tedford does not allege in the Amended Complaint any "wide disparities" in rates or persistent underperformance. *See Clinton v. Baxter Int'l Inc.*, No. 25-cv-3368, 2025 WL 3470685, at *7 (N.D. Ill. Dec. 3, 2025) (dismissing stable value fund claim because plaintiff failed to plead that there were "year-in, year-out better-performing alternatives that cast doubt on the Investment Committee's process for monitoring and renewing" the fund). His allegation that the Fixed Income Fund underperformed his alleged comparators "by an average of almost 48%" (ECF No. 20 at 8, 29) should be rejected given the haphazard way in which he aggregates the performance of his cherry-picked funds across some years but not others (ECF No. 15-1 at 12). And Tedford's cases regarding the extent of the alleged underperformance (ECF No. 20 at 29-30) lend no support to his claim; some involved chronic underperformance and/or additional allegations of

4

imprudence,[2] while others did not even discuss underperformance.[3]

*Third*, Tedford's contention that the Fixed Income Fund should be "reviewed and rebid quarterly which can be improved by RFPs and negotiations" (*id.* at 6, 17) fails because he makes no such allegation in the Amended Complaint, and courts routinely refuse to consider allegations made for the first time in an opposition brief. *See, e.g.*, *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007); *Takata v. Riot Blockchain, Inc.*, No. 18-cv-2293, 2020 WL 2079375, at *16 (D.N.J. Apr. 30, 2020). Nor could he, because the Form 5500 on which he relies (ECF No. 21-4 at 11) does not state that the Plan fiduciaries should solicit bids; rather, it explains a contractual feature pursuant to which the Fixed Income Fund's crediting rate resets. Even if the Amended Complaint alleged that the Plan fiduciaries failed to conduct an RFP, that would not support an inference of a breach because there is no duty to conduct RFPs. *See, e.g.*, *Mator*, 102 F.4th at 188-89 (citing *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579-80 (7th Cir. 2022)); *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-cv-6685, 2019 WL 4466714, at *8 (S.D.N.Y. Sept. 18, 2019). None of Tedford's cases (ECF No. 20 at 18) hold otherwise.

**B.     Tedford Fails To Allege Any Plausible Facts That Would Allow A Comparison Of The Fixed Income Fund To His Comparator Funds.**

As previously explained (ECF No. 15-1 at 13-14), Tedford's fiduciary-breach claim

---

[2] *Payne v. Hormel Foods Corp.*, No. 24-cv-545, 2024 WL 4228613, at *2 (D. Minn. Sept. 18, 2024) (alleging six consecutive years of underperformance); *In re Quest Diagnostics Inc. ERISA Litig.*, No. 20-cv-7936, 2021 WL 1783274, at *3 (D.N.J. May 4, 2021) (comparing challenged fund to its designated benchmark); *Berkelhammer v. Automatic Data Processing, Inc.*, No. 20-cv-5696, 2022 WL 3593975, at *7-8 (D.N.J. Aug. 23, 2022) (same); *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 217-18 (6th Cir. 2024) (comparing challenged fund to industry-recognized benchmark); *Binder v. PPL Corp.*, No. 22-cv-133, 2024 WL 1096819, at *3 (E.D. Pa. Mar. 12, 2024) (alleging five consecutive years of underperformance); *Carter v. Sentara Healthcare Fiduciary Comm.*, No. 25-cv-16, 2025 WL 2427614, at *4-6 (E.D. Va. Aug. 11, 2025) (ruling plaintiffs plausibly alleged fiduciaries had *no* monitoring process).

[3] *See Miller v. AutoZone, Inc.*, No. 19-cv-2779, 2020 WL 6479564, at *5 (W.D. Tenn. Sept. 18, 2020); *Terraza v. Safeway, Inc.*, 241 F. Supp. 3d 1057, 1075-81 (N.D. Cal. 2017).

should be dismissed for the additional reason that he fails to allege *any* basis for comparing the Fixed Income Fund to his alleged comparators. Tedford urges the Court to reject Defendants' argument because (i) the Third Circuit has rejected the "meaningful benchmark" pleading standard (ECF No. 20 at 20); (ii) Defendants inappropriately cite the Stable Value Investment Association's ("SVIA's") website for purposes of "ask[ing] this Court to view debatable facts in their favor" (*id.* at 12-13); and (iii) his alleged comparator funds "share the same 'core similarities'" with the Fixed Income Fund (*id.* at 20). Tedford's contentions are without merit.

Tedford's first argument misses the point. Tedford fails to allege *any* basis for comparing the Fixed Income Fund to his alleged comparators such that a prudent fiduciary in like circumstances would have selected a different fund. (ECF No. 15-1 at 13-14.) He provides no information about his alleged comparators beyond that they are "stable value GICs" (ECF No. 14 ¶ 84) while conceding that there are "several different types" of stable value funds that differ in several respects, including their degree of risk, whether the stable value fund owns the assets of the underlying funds, and how susceptible fund assets are to claims and liabilities of the insurer (*id.* ¶¶ 77-79; ECF No. 20 at 6). Whether or not the Third Circuit would adopt the "meaningful benchmark" standard, one thing is clear: it would not deem plausible a conclusory comparison, particularly given the "context-specific" inquiry required in evaluating fiduciary-breach claims. *Hughes*, 595 U.S. at 173; *see Mator*, 102 F.4th at 190 (considering funds' characteristics and concluding that complaint compared challenged fund to share classes of same exact fund that were "identical" in all respects other than their fees); *see also* Brief for the United States as Amicus Curiae at 11-12, 16-17, *Parker-Hannifin Corp. v. Johnson*, No. 24-1030 (U.S. 2025) (urging, on behalf of the U.S. Department of Labor, the Supreme Court to grant certiorari and rule that pleading imprudence based on investment's relative underperformance requires

6

allegations of a meaningful benchmark).[4]

Tedford's second argument should be rejected because courts regularly consult publicly available sources for background information, especially where there is no dispute as to their authenticity. *See, e.g.*, *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005) (citing definitions from National Association of Securities Dealers website); *Terraza*, 241 F. Supp. 3d at 1066-67 (considering definitions from SVIA website). Here, Defendants cite the SVIA website for the purpose of providing background information about the different types of stable value investments, each with differing structures, risks, and characteristics, which is precisely what Tedford concedes in his Opposition Brief (ECF No. 20 at 6). The authorities relied on by Tedford (*id.* at 12-13) are not to the contrary.[5]

Tedford's third argument should be rejected because it is contrary to his allegations in the Amended Complaint that there are "several different types" of stable value funds with different characteristics, including their investment risk. (ECF No. 14 ¶¶ 77-79.) His contention that the alleged comparator funds (not the Plan) "all have the same leverage based on size" (ECF No. 20 at 7) makes no sense and, in any event, should be disregarded because it appears nowhere in the Amended Complaint. *See* p.5, *supra*. Similarly unavailing is Tedford's request that the Court wade through Form 5500s and Auditor Reports not attached to or explained in any meaningful

---

[4] While the Third Circuit has not expressly adopted the meaningful benchmark standard, Tedford mischaracterizes *Mator* when he contends that the Third Circuit has rejected it (ECF No. 20 at 20). In fact, the court "agree[d] with [its] sister Circuits' articulation of the relevant law," including two decisions articulating the "meaningful benchmark" standard. 102 F.4th at 188.

[5] *See Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 327-29 (E.D. Pa. 2020) (refusing to consider meeting minutes and confidential information requests); *Schmidt v. Skolas*, 770 F.3d 241, 249-50 (3d Cir. 2014) (rejecting reliance on documents not embraced by complaint for purposes of ascertaining statute of limitations accrual date); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) (concluding entity's description of its business from its own website was unreliable); *Morgan v. Pennsylvania*, No. 23-cv-872, 2023 WL 6461245, at *3 (M.D. Pa. Oct. 2, 2023) (declining to take judicial notice of "unverified and non-public" social media profiles).

way in the Amended Complaint (ECF No. 20 at 7-8) to try to belatedly identify some of the comparator funds' characteristics. *See, e.g.*, *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 371 (5th Cir. 2024) ("[A]ttaching an exhibit to a pleading does not insulate arguments derived from that exhibit against forfeiture."); *Newton v. City of Atchison, Kan.*, No. 23-cv-2153, 2024 WL 2272565, at *4 (D. Kan. May 20, 2024) ("It is not the job of the court or Defendants to search through the Complaint and its [allegations and documents incorporated by reference] to glean a clear and succinct statement of each claim for relief.") (cleaned up); *Zalewski v. T.P. Builders, Inc.*, No. 10-cv-876, 2011 WL 3328549, at *5 (N.D.N.Y. Aug. 2, 2011) ("The court will not search through the documents looking for evidence.").

That Tedford expressly alleges that there are differences among types of stable value funds makes this case akin to *Coppel v. SeaWorld Parks & Entertainment, Inc.*, No. 21-cv-1430, 2024 WL 3086702 (S.D. Cal. Jan. 31, 2024), where the court rejected a comparison of a general account fund to a separate account fund, *id.* at *15-16, and distinguishable from *Clinton*, 2025 WL 3470685, at *6, where the complaint was silent on any such differences. Tedford's cases (ECF No. 20 at 24) are not to the contrary.[6] At bottom, Tedford asks the Court to conclude that the Fixed Income Fund and his comparators are similar because he says so (*id.* at 21), but his *ipse dixit* cannot carry the day.

### C. Tedford Fails To State Plausible Claims Based On The Selection Of The Fixed Income Fund And Against The Administrative Committee.

As previously discussed, two aspects of Tedford's fiduciary-breach claim are dismissible

---

[6] *See Seibert v. Nokia of Am. Corp.*, No. 21-cv-20478, 2024 WL 2316551, at *3 (D.N.J. May 22, 2024) (alleging comparator funds were in same Morningstar peer group); *Payne*, 2024 WL 4228613, at *7-8 (comparing returns between general account funds); *Lacrosse v. Jack Henry & Assocs., Inc.*, No. 23-cv-5088, 2024 WL 3564575, at *3-4 (W.D. Mo. July 11, 2024) (identifying whether comparator funds were separate or general account products); *Miller*, 2020 WL 6479564, at *7 (comparing general account fund to other general account funds).

8

for additional reasons. Insofar as his claim is based on the initial selection in 1992 of the Fixed

Income Fund (*id.* at Point I.B), Tedford does not dispute that it is time-barred. And, in arguing

that the Administrative Committee has fiduciary responsibility for Plan investments (ECF No. 20

at 3-4), Tedford ignores the plain language of section 15.1 of the Plan, which states that it is the

Investment Committee—not the Administrative Committee—that has the fiduciary responsibility

for selecting and monitoring investment options:

> AXA Equitable has expressly designated the Administrative Committee as the Plan
> Administrator of the Plan with the authority to control and manage the Plan's
> operation and administration *(except with regard to the investment functions which
> have been delegated to the Investment Committee) . . . . The Investment Committee
> shall be responsible for . . . selecting asset allocations and investment options for
> the Plan . . . .*

(ECF No. 15-3 at 11 (emphasis added).)

## II.      TEDFORD'S DUTY-TO-MONITOR CLAIM SHOULD BE DISMISSED.

Tedford does not dispute that if his claim for breach of fiduciary duty fails, so does his

claim for breach of the duty to monitor. (ECF No. 15-1 at 16-17; ECF No. 20 at 32.)

## III.     TEDFORD FAILS TO STATE A PLAUSIBLE PROHIBITED TRANSACTION CLAIM.

### A.      Tedford's Section 406(a)(1)(C) Claim Should Be Dismissed.

Tedford does not offer any response to Defendants' argument that his section

406(a)(1)(C) claim is untimely given that Alight entered into a contract to provide services to the

Plan in 2011. (ECF No. 15-1 at 18-19.) His newfound reliance on an amendment to that contract

does not help him because, even if considered (which it should not be, *see* p.11, *infra*), it became

effective more than six years ago on January 1, 2019 (ECF No. 21-1) and is thus untimely.

While the Court need not proceed further, Tedford's arguments as to why Alight was a

party-in-interest—a necessary predicate to his section 406(a)(1)(C) claim—are unavailing. *First*,

Tedford contends that Alight was a party-in-interest at the time of the initial contract because the

Plan's Auditor Report (ECF No. 21-3 at 49) states: "'The Plan administrator and the Plan's counsel believe that the Plan's transactions with related parties and parties-in-interest' fell under the 'exemptions'" (ECF No. 20 at 37). But that does not state that Alight was a party-in-interest at the time it contracted to provide services to the Plan. In fact, Tedford conveniently omits the first sentence, which expressly states that the Plan's relationship with Alight first began effective March 21, 2011. (ECF No. 21-3 at 65.) And, contrary to his assertion (ECF No. 20 at 4, 14, 33-35), there is nothing in the Amended Complaint or Form 5500 indicating that Alight received asset-based fees (i.e., revenue-sharing payments) or had any relationship with the Plan prior to that date.

*Second*, the Court should reject Tedford's contention (*id.* at 39-40) that the Supreme Court's ruling in *Cunningham v. Cornell University*, 604 U.S. 693 (2024) dispensed with the statutory requirement that he plausibly allege the existence of a relationship between Alight and the Plan at the time of their initial contract, *Danza v. Fidelity Management Trust Co.*, 533 F. App'x 120 (3d Cir. 2013). *Cunningham* ruled that a plaintiff need not plead the nonexistence of an affirmative defense (i.e., a prohibited transaction exemption) to state a claim under section 406(a)(1)(C)—an argument that Defendants do not advance here. *Cunningham* did not alter the basic section 406(a)(1) elements that must be pled, including a "transaction" between "the plan and a party in interest," let alone overrule *sub silentio* the longstanding and widely recognized standard set forth in *Danza*. (ECF No. 15-1 at 17-18.) Nor is there any merit to Tedford's assertion that adhering to *Danza* would force a plan to "become locked into a long-term, disadvantageous service contract" (ECF No. 20 at 40) (citation omitted), because a 401(k) plan fiduciary has an ongoing duty to monitor service providers it retains (ECF No. 15-1 at 5).

*Third*, Tedford contends that Alight was a party-in-interest during the putative class

10

period based on an amendment to its contract. (ECF No. 20 at 4, 38 n.5.) This assertion should be disregarded because, as discussed, *see* p.5, *supra*, it appears nowhere in the Amended Complaint. Finally, Tedford's reliance on this document (ECF No. 21-1) is entirely inappropriate given that Tedford's use of the document violates the Federal Rules of Evidence. As the accompanying Declaration of Russell L. Hirschhorn makes clear, the document is confidential and was "produced for settlement purposes only." (*Id.* Ex. A.)

### B.    Tedford's Section 406(a)(1)(D) Claim Should Be Dismissed.

Defendants seek dismissal of Tedford's ERISA section 406(a)(1)(D) claim on the ground that payments made consistent with the terms of the recordkeeping contract are not "transactions" within the meaning of section 406. (ECF No. 15-1 at 19.) Here, too, Tedford's contention that *Cunningham* effectively overruled *Danza* (ECF No. 20 at 39) is wrong. Whether or not revenue sharing payments can constitute a prohibited transaction (*id.*), *Cunningham* did not address—let alone decide—what constitutes an actionable "transaction" under section 406; it observed only that nothing in the statute's text "removes from its categorical bar transactions that were necessary for the plan or involved reasonable compensation," 604 U.S. at 700. That statement says nothing about the question presented here, which is whether routine payments made pursuant to the terms of a valid contract are actionable "transactions" under section 406(a)(1)(D), and does not disturb Defendants' authorities establishing that they are not. Equally unavailing is Tedford's invocation of the Third Circuit's decision in *Sweda v. University of Pennsylvania*, 923 F.3d 320 (3d Cir. 2019). The court there did not hold, as Tedford contends, that "prohibited transactions occurred every time property was exchanged or services were rendered" (ECF No. 20 at 36-37), but rather restated the plaintiffs' allegation in that case, *Sweda*, 923 F.3d at 339.

11

## CONCLUSION

For the reasons stated herein and in Defendants' Moving Brief, the Amended Complaint should be dismissed with prejudice.

Dated:     December 22, 2025                    PROSKAUER ROSE LLP


By:     _*/s/ Neil V. Shah*_
                    Neil V. Shah

Russell L. Hirschhorn (admitted *pro hac vice*)
Sydney L. Juliano (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036
(212) 969-3000
nshah@proskauer.com
rhirschhorn@proskauer.com
sjuliano@proskauer.com

*Counsel for Defendants*