<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| HOLLIS TEDFORD, individually and on behalf of all others similarly situated,<br><br>     *Plaintiff*,<br><br>     v.<br><br>EQUITABLE FINANCIAL LIFE INSURANCE COMPANY, THE BENEFITS ADMINISTRATIVE COMMITTEE FOR THE EQUITABLE 401(k) PLAN, and THE INVESTMENT COMMITTEE FOR THE EQUITABLE 401(k) PLAN,<br><br>     *Defendants*. | Civil Action No. 25-cv-2180<br><br>**OPINION**<br><br>May 19, 2026 |

**SEMPER**, District Judge.

  **THIS MATTER** comes before the Court upon the Motion to Dismiss filed by Equitable Financial Life Insurance Company ("Equitable"), the Benefits Administrative Committee for the Equitable 401(k) Plan ("Administrative Committee"), and the Investment Committee for the Equitable 401(k) Plan ("Investment Committee") (collectively, "Defendants"). (ECF 15, "Motion" or "Defs.' Mot.") Defendants seek dismissal of the First Amended Complaint (ECF 14, "First Amended Complaint" or "FAC") filed by Hollis Tedford ("Plaintiff") asserting three counts under the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff claims Defendants are liable for (1) breaches of the fiduciary duty of prudence under 29 U.S.C. § 1104(a) (Count I); (2) failure to adequately monitor other fiduciaries under 29 U.S.C. § 1104(a) (Count II);

1

and (3) prohibited transactions under 29 U.S.C. § 1106(a)(1).  For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's First Amended Complaint is **DISMISSED** without prejudice in its entirety.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

The present dispute is brought by Hollis Tedford, a resident of Falmouth, Maine, who participated in the Equitable 401(k) plan (the "Plan") during the course of his employment.  (FAC ¶ 29.)  He purports to bring this suit on behalf of a class of likely situated individuals against the Plan's fiduciaries.  (*Id.* ¶ 1.)

The Plan is a defined contribution retirement plan, established pursuant to 29 U.S.C. §§ 1002(2)(A) and 1002(34) of ERISA.  (*Id.* ¶ 2.)  The Plan enables individuals to make tax-deferred contributions from their salaries to the Plan.  (*Id.*)  At all times during the putative Class Period from approximately 2019 to 2023, the plan had over $2 billion in assets under management.  (*Id.* ¶¶ 11, 12, 59.)  The significant value of the Plan's assets makes it one of the largest plans in the United States.[2]  (*Id.* ¶ 13.)  Additionally, the Plan "is also large in terms of the number of participants" because "[f]rom 2019 to 2023 it had over 12,000 participants with account balances,

---

[1] The facts and procedural history are derived from the First Amended Complaint (ECF 14), the briefs filed by the parties (ECF Nos. 15, 20, and 22), and the accompanying exhibits and declarations.  The Amicus Brief filed by Stable Value Investment Association offered context regarding the complex facts alleged in this matter.  (ECF 19-1.)  When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom.  *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).  The Court also considers any "document integral to or explicitly relied upon in the complaint."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[2] Plaintiff alleges that "[i]n 2021, only 0.2 percent (1,011 of 641,747) of plans in the country had more than $1 billion in assets under management.  In addition, this was true at the start of the [putative] Class Period in 2019 where only 0.1 percent (776 of 603,217) of 401(k) plans in the country were as large as the Plan."  (*See* FAC ¶ 13.)

with a high of 15,877 participants in 2020 … only 0.1 percent (844 of 641,747) of 401(k) plans in the country were as large as the plan [in 2021.]" (*Id.* ¶ 15.)  Plaintiff alleges that the significant size of the Plan renders it a "jumbo plan" in the contributory investment plan marketplace, and "the Plan had substantial bargaining power regarding the fees and expenses that were charged against participant's investments." (*Id.* ¶ 6.)

Plaintiff alleges that Defendants breached their fiduciary duty of prudence "by selecting and/or maintaining certain guaranteed investment contracts ('GICs') in the Plan with lower credit ratings when compared to similar or identical investments." (*Id.* ¶ 19.)  Plaintiff specifically takes issue with the choice to invest in the Equitable Fixed Income Fund ("Equitable Fund"). (*Id.* ¶ 20.) This fund has investments in nine synthetic GICs offered by several large American banks and insurance companies. (*Id.* ¶ 57.)  Plaintiff argues this fund led to "significantly lower rates of return" and a "prudent beneficiary would not have included this underperforming investment option that also carried significantly more risk than other investment options that had similar goals, *i.e.*, the preservation of assets." (*Id.* ¶¶ 20, 21.)

The Equitable Fund is a stable value investment fund that has been available to Plan participants since 1992. (Defs.' Mot. at 3.)  Stable value investments are intended to preserve principal and provide bond-like returns to investors. (ECF 19-1, "Stable Value Investment Association Amicus Brief" or "SVIA Br." at 12; Defs.' Mot. at 4 n.2.)  These funds provide a rate of return known as a "crediting rate." (FAC ¶ 76; Defs.' Mot. at 4.)  Stable value investments come in several different forms, including "'synthetic' stable value funds where the principal is guaranteed by multiple 'wrap providers' and the fund owns the assets of the underlying funds." (FAC ¶ 77.)  Synthetic funds can be further distinguished into different subdivisions including individually managed accounts and pooled stable value investments. (SVIA Br. at 14.)  In addition

3

to synthetic funds, GICs can come in the form of "general account products" and "separate account products" which have different risk projections based on the extent to which the investments are subject to collection by creditors. (Defs.' Mot. at 4.) These different categories have "distinctive structure[s] that may cause them to be better suited for a particular plan and its participants." (SVIA Br. at 14.) Furthermore, "[e]ven *within* each category, the options vary widely with respect to key characteristics" including crediting rates and fee structures. (*Id.* at 14-16.) The differences between stable value funds allow for investors to make "intentional trade-off[s] for specific strategic reasons" to benefit the specific goals and values of plan participants. (*Id.* at 16.) These goals can vary, such as guaranteeing a strict rate of return or producing maximum liquidity or transparency into assets and fee structures. (*Id.*)

Defendants entered into a contract with Alight Financial Solutions, LLC ("Alight") to provide recordkeeping services for the Plan. (FAC ¶ 18.) The two kinds of "essential" recordkeeping services required for large Plans are "Bundled" services which provide a "suite of essential recordkeeping services"[3] and "A La Carte" services, which have "additional fees based on the conduct of individual participants and the usage of the services by individual participants."[4] (*Id.* ¶¶ 96-98.) Plaintiff alleges Alight received "millions of dollars in indirect compensation from

---

[3] "Bundled" services include: Basic account recordkeeping (*e.g.*, demographic, source, investment and vesting records); Multi-channel participant and plan sponsor access (*e.g.*, phone, web); Daily participant transaction accounting (*e.g.*, purchases, redemptions, exchanges; Payroll service (*e.g.*, hardships, in-service withdrawals, termination distributions); Participant tax reporting services (*e.g.*, IRS Form 1099 R); Participant confirmations, statements, and standard notices; Plan-level reporting and annual financial package (excluding IRS Form 5500); Participant education (*e.g.*, newsletters, web articles, standard communication materials); Plan consulting (*e.g.*, preapproved document services, operational materials); and Plan consulting (*e.g.*, preapproved document services, operational compliance support). (FAC ¶ 96.)

[4] "A La Carte" services include: Loan processing; Brokerage services/account maintenance (if offered by the plan); Distribution services; and Processing of qualified domestic relations orders. (*Id.*)

investments within the Plan" in addition to direct fees paid by Equitable. (*Id*.) Plaintiff asserts that large plans have the leverage to take advantage of economies of scale and achieve a lower fee rate charged per-participant, rather than a fee structure based on the assets included in a fund. (*Id.* ¶ 100.)

Defendants filed the present Motion to Dismiss Plaintiff's First Amended Complaint on October 22, 2025. (*See* Defs.' Mot.) Stable Value Investment Association filed its Motion for Leave to file Amicus Brief on October 29, 2025. (*See* SVIA Br.) Plaintiff filed his opposition brief on November 24, 2025. (ECF 20, "Opposition" or "Opp.") Defendants replied on December 22, 2025. (ECF 22, "Reply.") The Court granted SVIA leave to file Amicus Brief on May 15, 2026. (ECF 26.) SVIA filed an amicus brief in support of Defendant's Motion to Dismiss on May 18, 2026. (ECF 27.)[5]

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir.

---

[5] SVIA's May 18, 2026 brief was not considered when the Court decided Defendant's Motion to Dismiss.

2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth.  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's well-pleaded facts as true."  *Fowler*, 578 F.3d at 210.

### III.   ANALYSIS

#### A.  Breach of the Duty of Prudence

In Count I of his First Amended Complaint, Plaintiff argues that the Administrative Committee and the Investment Committee breached their duties to prudently manage Plan investments by selecting and retaining the Equitable Fund "despite poor performance in relation to other comparable investments."  (FAC ¶ 117.)  Plaintiff claims this breach directly and proximately caused "millions of dollars of losses due to excessive costs and lower net investment returns" which lowered the amount of savings Plan participants had available to them for retirement.  (*Id*. ¶ 118.)  Plaintiff further claims that pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Administrative Committee and Investment Committee are obligated to restore the losses they caused by their breach of the duty of prudence.  (*Id*. ¶ 119.)

Defendants argue in response that Plaintiff failed to show plausible facts giving rise to an inference of imprudent management.  (Defs.' Mot. at 9.)  Specifically, Defendants claim Count I is not well-plead because (1) allegations of underperformance, without more, fail to show an inference of imprudence; (2) Plaintiff fails to provide adequate benchmarks for comparison of the Equitable Fund because the Complaint does not identify or discuss the characteristics of the fifteen stable value fund comparators; and (3) Plaintiff's allegation that the Equitable Fund was riskier than comparators is conclusory and implausible.  (*Id*.)  Additionally, Defendants argue Plaintiff's

claims are time-barred by ERISA's six-year statute of limitations and the Administrative Committee has no fiduciary duty regarding managing Plan investments. (*Id.*)

When assessing the sufficiency of an ERISA complaint, courts assess the reasonableness of a fiduciary's actions. Courts "bear[] in mind ERISA's twin goals of protecting participants and encouraging plan creation through a predictable set of liabilities for employers." *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 184 (3d Cir. 2024). Courts must also "give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise" because "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs." *Hughes v. Northwestern University*, 595 U.S. 170, 177 (2022). Therefore, "[t]o plead a breach of the duty of prudence under ERISA … a plaintiff must plausibly allege fiduciary decisions outside a range of reasonableness." *Mator*, 102 F. 4th at 184. An ERISA fiduciary must manage the plan "solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] … would use." § 1104(a)(1).

Courts do not determine prudence based on the results of an investment choice, "but on process—that is, whether the facts, assessed holistically, permit a reasonable inference that a fiduciary's decision-making process was deficient." *Grink v. Virtua Health, Inc.*, 812 F. Supp. 3d 434, 451 (D.N.J. 2025) (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996)). When a plaintiff does not have direct evidence of a defendant's process in making investment decisions, convincing circumstantial evidence may suffice to establish an inference of imprudent process. *See Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1022 (9th Cir. 2025) ("[A] plaintiff can make circumstantial factual allegations from which the court may reasonably infer from what is alleged that the process was flawed.") (internal quotations omitted); *Pension Ben.*

*Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) ("[A] claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably 'infer from what is alleged that the process was flawed.'") (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009)).  The "key" to establishing an inference of imprudence based on circumstantial evidence is to present identifiable comparators—that is, a "meaningful benchmark" for comparison—to the Court, which requires more than simply alleging underperformance.  *See Albert v. Oshkosh Corp.*, 47 F.4th 570, 581 (7th Cir. 2022).

Here, Plaintiff primarily relies on allegations of underperformance to establish imprudent management of the Plan.  Plaintiff argues "the [Equitable Fund's] rates *decreased* when it should have *increased* and there were wide disparities" between the Equitable Fund's rates and "comparable GICs, including GIC rates offered by the same carriers."  (Opp. at 19.)  The Court agrees with Defendants that this is simply "a repackaged allegation of underperformance" because Plaintiff does not elaborate on how Defendants' *process* lead to Defendants choosing the Equitable Fund to the detriment of the Plan participants.  Hindsight is an insufficient foundation to show imprudence.  *See Grink*, 812 F. Supp. 3d at 451.  For example, courts have recognized duty of prudence claims when a plaintiff presented evidence that a plan's fiduciaries did not follow the plan's Investment Policy Statement criteria.  *Id*. at 443.

Because Plaintiff's theory of imprudence rests solely on the allegation that the Plan had "considerable leverage to bargain for higher crediting rates" yet underperformed, meaningful benchmarks are necessary to determine whether an inference of imprudence has been stated.  (FAC ¶ 32.)  However, Plaintiff did not establish that the comparator GICs presented in the First Amended Complaint are sufficiently similar to the Equitable Fund to constitute "meaningful

8

benchmarks." *Mator*, 102 F.4th at 188.  As previously discussed, crediting rates are not the only characteristics of GICs that fiduciaries consider when choosing investments.  In the First Amended Complaint, Plaintiff constructed a chart of GICs with varying amounts of assets and plan participants.  (FAC ¶ 85.)  Plaintiff only "sets forth the performance of just two funds over a four-year period and for the other thirteen, just one or two years of performance, often in non-consecutive years."  (*Id*.)  The Court agrees with Defendants that a greater analysis of the characteristics of the selected GICs and their specific characteristics and plan goals is necessary for the Court to determine they are "sufficiently similar" for the purpose of being "meaningful benchmarks" supporting an inference of imprudence.

Plaintiff argued in his opposition brief that whether benchmarks are comparable is not properly resolved at the Motion to Dismiss stage.  (Opp. at 11.)  Plaintiff is right that it would be premature to conclusively hold whether the alleged comparators are sufficiently similar, or whether the alleged 48% rate of underperformance was sufficiently calculated.  (*See* FAC ¶ 86.)  However, the Court may properly rule that a plaintiff has not met their burden of presenting a plausible argument that the comparators are sufficiently similar benchmarks, and does so today.  Therefore, Defendants' Motion to Dismiss Count I of Plaintiff's First Amended Complaint is **GRANTED** and Count I of Plaintiff's First Amended Complaint is hereby **DISMISSED** without prejudice.[6]

B.  Breach of the Duty to Monitor

Count II of the First Amended Complaint asserts that Equitable failed to adequately monitor the Administrative Committee and Investment Committee in performing their fiduciary

---

[6] Because Count I is dismissed, the Court need not decide whether Plaintiff's claim is time barred or whether the Administrative Committee is a fiduciary which could be liable for breach of the duty of prudence.

duties. (FAC ¶¶ 121-127.) This Court has held that a duty to monitor claim cannot be asserted in an ERISA action when a duty of prudence claim has not been established. *In re Allergan ERISA Litigation*, No. 17-1554, 2018 WL 8415676 at *7 (D.N.J. July 2, 2018) (quoting *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016)). Plaintiff rests his duty to monitor claim on the plausibility of his breach of the duty of prudence claim. (Opp. at 32.) Therefore, Defendants' Motion to Dismiss Count II of Plaintiff's First Amended Complaint is **GRANTED** and Count II of Plaintiff's FAC is **DISMISSED** without prejudice.

C. Prohibited Transaction claims

Count III of the First Amended Complaint asserts two claims of prohibited transactions in violation of ERISA §§ 406(a)(1)(C) and (D). (*See* FAC ¶¶ 128-33.) Section 406(a)(1)(C) prohibits a direct or indirect "furnishing of goods, services, or facilities between the plan and a party in interest." § 406(a)(1)(C). Section 406(a)(1)(D) prohibits the "transfer to, or use by or for the benefit of a party in interest of any assets of the plan." § 406(a)(1)(D). Plaintiff argues the contract for recordkeeping between Alight and the Plan violated § 406(a)(1)(C) because the fees were "excessive." (FAC ¶ 132.) Plaintiff supports this claim by presenting data showing that the Plan paid higher recordkeeping fees than other plans. (*Id*. ¶ 107.) Plaintiff asserts Defendants violated § 406(a)(1)(D) by making payments pursuant to the contract using income from the Plan to benefit a party in interest. (FAC ¶ 112.) A claim under § 406(a)(1) is well-plead if the plaintiff established a fiduciary "(1) caused a plan to engage in a transaction (2) that the fiduciary knows or should know ... constitutes a direct or indirect ... furnishing of goods, services, or facilities (3) between the plan and a party in interest." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 700 (2025) (cleaned up).

Defendants do not dispute that Alight received fees for recordkeeping or that the

10

Investment Committee was a fiduciary under the Plan. (Defs.' Mot. at 17.) Defendants instead argue that Alight was not a party in interest at the time "it was engaged to provide recordkeeping services to the Plan." (*Id.*) Defendants cite *Danza v. Fidelity Mgmt. Tr. Co.*, 533 F. App'x 120, 125-26 (3d Cir. 2013) for support, on the grounds this Circuit has already held that "a service provider is not a party in interest at the time it first contracts with a plan." (*Id.* at 18.) Furthermore, Defendants argue that payments pursuant to a valid contract are not "transactions" within the meaning of § 406(a)(1)(D). (*Id.* at 19.) Defendants also argue Plaintiff's claim is time-barred pursuant to ERISA's six-year statute of limitations because the contract was formed over a decade before Plaintiff brought the present claims. (*Id.* at 19.) Plaintiff argues in response that Defendants' reliance on *Danza* is misplaced because it "did not involve revenue sharing and are therefore inapplicable." Plaintiff also argues that the Supreme Court clarified in *Cunningham* that revenue sharing agreements can constitute a prohibited transaction and effectively overruled *Danza*. (Opp. at 39.)

The Court agrees with Defendants that the holding in *Cunningham* was limited to holding that a plaintiff need not combat potential affirmative defenses in pleading a prohibited transaction claim. (Reply at 10.) *Cunningham*, 604 U.S. at 702 ("The Court today holds that plaintiffs seeking to state a § 1106(a)(1)(C) claim must plausibly allege that a plan fiduciary engaged in a transaction proscribed therein, no more, no less."). The Court also holds that *Danza* is on point and is still good law after *Cunningham*. *Danza* clearly held that the defendant, Fidelity, a recordkeeping servicer, was not a party in interest at the time the recordkeeping contract was formed. "While Fidelity is currently a party in interest as a service provider to the plan, it was not 'providing services' and was not a fiduciary when the Trust Agreement was signed, so that transaction did not fall within a prohibited category." *Danza*, 533 F. App'x at 125. Like Fidelity in *Danza*, Alight

11

did not provide services to the Plan at the time the contract was formed. Thus, Plaintiff fails to state a claim under § 406(a)(1)(C).

As for subsection (D), Defendants argue it is well-established that payments pursuant to a valid contract are not prohibited under ERISA. *See D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co. ("D.L. Markham")*, 88 F.4th 602, 610 (5th Cir. 2023). Defendants also find support in cases from the Western District of Texas and Southern District of California. (Defs.' Mot. at 19.) In response, Plaintiff argues that the plain text of § 1106(a)(1)(C) provides no exception for transactions pursuant to a contract that "causes the service provider to be a party in interest." (Opp. at 40.) Plaintiff cites a footnote in *Comerica Bank for DALRC Retiree Benefit Tr. v. Voluntary Emp. Benefits Assocs., Inc.*, No. 09-CV-1164, 2012 WL 12948705, at *18 n. 27 (N.D. Ga. Jan. 11, 2012). In fact, that court disagreed with an Opinion by this Court in *UFCW Local 56 Health & Welfare Fund v. Brandywine Operating P'ship, L.P.*, 2005 WL 3555390 (D.N.J. 2005). The *Comerica Bank* court interpreted *Brandywine* to stand for the proposition that "to be a party in interest, the party must have a service relationship that exists independently of the transaction that is allegedly prohibited by 29 U.S.C. § 1106." *Comerica Bank for DALRC Retiree Benefit Trust*, 2012 WL 12948705 at *18 n. 27. Therefore, this Court's precedents align better with the cases cited by Defendants, which state a transaction pursuant to a valid contract does not give rise to ERISA liability. Accordingly, Defendants' Motion to Dismiss Count III of Plaintiff's First Amended Complaint is **GRANTED** and Count III of Plaintiff's First Amended Complaint is **DISMISSED** without prejudice.[7]

---

[7] Because Plaintiff fails to state a claim under Section 406(a), the Court need not analyze Defendants' statute of limitations arguments.

## IV.    CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss (ECF 15) is **GRANTED**. Plaintiff's First Amended Complaint is **DISMISSED** without prejudice in its entirety. An accompanying Order follows this Opinion.

*/s/  Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:   Clerk
cc:      Andre M. Espinosa, U.S.M.J.
          Parties